**Lawrence J. CONNELL, Plaintiff,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Defendant.**

No. 98 CIV. 2588(DC).

United States District Court,
S.D. New York.

Aug. 16, 2000.

Daniel H. Greenberg, New York City, for Plaintiff.

Mary Schuette, Associate General Counsel for Consolidated Edison Company of New York, Inc., By Carole Sobin, Assistant General Counsel, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

In this employment discrimination case, plaintiff Lawrence J. Connell alleges that defendant Consolidated Edison Company of New York, Inc. ("Con Edison") unlawfully terminated his employment because of his age. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant presents compelling evidence that Connell was terminated not because of his age—he was only forty-three years old at the time of his discharge—but because he and three other supervisory employees engaged in inappropriate conduct toward a co-worker

who had reported an environmental infraction. Indeed, the record shows that all four employees were discharged for violating Con Edison's strict policy against retaliating against employees who raise environmental concerns. On the record before the Court, no reasonable jury could conclude that defendant discharged plaintiff because of his age. Accordingly, defendant's motion is granted and the complaint is dismissed.

## BACKGROUND

### A. The Facts

Construed in the light most favorable to plaintiff, the facts are as follows:

#### 1. Plaintiff's Employment with Defendant

Plaintiff was nineteen years old when Con Edison, one of the nation's largest energy companies, hired him as a general utility worker. (Pl. Dep. at 24). In 1992, plaintiff was promoted to a supervisory position within the Bronx Customer Service Department ("CSD"). (*Id.* at 26–28). As part of a company-wide reorganization plan in 1996, defendant transferred him to the Bronx Gas Distribution Services ("GDS"), a department within CSD. Plaintiff's responsibilities at GDS included supervising installation or replacement of gas meters on a non-emergency basis.

In 1997, Connell received an incentive award of $8,500 based on positive performance evaluations he received from his supervisors. Minto Soares, Vice President of CSD, and Anthony Codner, General Manager of GDS, both approved the award.

#### 2. Defendant's Environmental Awareness Program

On April 21, 1995, in connection with a criminal proceeding arising out of an explosion of an asbestos-insulated steam pipe in or around Gramercy Park, Judge John S. Martin of this Court appointed a moni-

tor, Mitchell Bernard, Esq. (the "Monitor"), to oversee Con Edison's environmental activities. (Cowie Aff. ¶¶ 4–5; Sobin Aff., Ex. B at 131, 134–35). In the Monitor's first report issued in October 1995, he criticized the actions of certain supervisors who had attempted to intimidate an union employee who had raised environmental concerns. As a direct result of that report, defendant pledged to this Court that it would not tolerate intimidation or mistreatment of employees who reported environmental violations. (Cowie Aff. ¶ 7). Defendant revised its Code of Conduct to institute a "no retaliation policy" and distributed notices throughout the company publicizing the change in 1996. (Sobin Aff., Exs. D, E). Defendant also developed new procedures to properly handle hazardous materials and appointed environmental ombudsmen to its local offices to oversee the policy changes. (Codner Aff. ¶¶ 12–13). Defendant assigned Kevin Kelly to act as GDS's ombudsman.

### 3. *The Incident*

On March 17, 1997, operating supervisor James Murphy found an improperly disposed of mercury thermostat in the closet. (Sobin Aff., Ex. C at 179). That same evening, Joseph Miller, an operating supervisor assigned to the night shift, found the thermostat in the drawer of a desk shared by all the operating supervisors. Following defendant's recently revised procedure on handling hazardous materials, Miller placed the thermostat into a double zip lock bag, disposed of the thermostat into the appropriate container, and filled out the necessary paperwork. (Codner Aff. ¶ 12; Miller Aff. ¶ 8). On March 18, 1997, Miller sent an e-mail to his supervisor Edward Gaibrois and to Kelly informing them of his actions. (Miller Aff. ¶ 13; *Id.,* Ex. A). That morning, Gaibrois called a meeting of operating supervisors, including Murphy and plaintiff, to express his concern over a violation of the company's procedure on the disposal of hazardous materials. Following the meeting, Murphy called Miller at home to express

his disapproval of Miller's actions in reporting the finding of the thermostat to supervisors. (Miller Aff. ¶ 16).

When Miller came to work that evening, he found a shovel with a tag that had his name on it on the operating supervisors' desk. (*Id.* ¶ 17). Miller felt that the shovel was left as a message to him that someone either "wanted to 'bury' [him]" or wanted him to go back to the construction department where he used to work. (*Id.*).

On March 21, 1997, plaintiff, Murphy, George Kurschner, and several other operating supervisors were in the office when plaintiff sent an anonymous e-mail ("March 21st E-mail") to Miller. (Pl. Dep. at 181). Plaintiff admitted that he logged onto the computer, with Kurschner's help, using the Bronx Control Center's ("BCC") password in an attempt to disguise his identity. (*Id.* at 189–90). The e-mail read:

> Now that you've solved the case of the missing paperwork for the thermostat we have bigger and better things for you to tackle. Save the whales, once saved check for mercury and paperwork.

(Miller Aff., Ex. B). The return address read "From ECGOP.BX."

Miller called Kelly informing him of the March 21st E-mail, Murphy's phone call, and the shovel incident. Miller asked Kelly to put a stop to what Miller considered to be harassing behavior by his co-workers. (Miller Aff. ¶ 25).

On March 24, 2000, plaintiff approached Miller after learning that Miller had reported the March 21st E-mail to supervisors. Miller informed plaintiff that Kelly had begun an investigation into the identity of the person who had sent the e-mail. (Pl. Dep. at 213; Miller Aff. ¶ 27). When Miller found out that it was plaintiff who had sent him the e-mail, he offered to ask Kelly to stop the investigation because he considered plaintiff to be a friend. Plaintiff told Miller that if he thought the e-mail

constituted harassment, he should let the investigation continue. (Pl. Dep. at 310).

GDS also began an internal investigation into Miller's allegations of harassment by his co-workers. (Codner Aff. ¶ 14). During a March 27, 1997 interview by Kelly and John Hettrich, General Manager of Bronx Operation Services, plaintiff admitted receiving the BCC's password from Kurschner and sending the March 21st E-mail. (Pl. Dep. at 213–14).

In April 1997, GDS asked defendant's Auditing Department ("AD") to review Miller's allegations of harassment. (Amrhein Aff. ¶ 7).[1] Defendant assigned Joseph Donner, an auditor, to investigate the case. In Donner's initial memo to Soares, he concluded that a "concerted effort by a number of GDS supervisors to harass Miller" had occurred because Miller had reported the finding of the thermostat. (O'Brien Aff., Ex. A). In a follow-up report to Soares, Donner confirmed his previous findings. (*Id.*).

#### 4. *Plaintiff's Discharge*

Codner, Janis Amrhein, Human Resources Manager, and Marilyn Benetatos, then-Manager of Organization Development, discussed the appropriate course of action to take with respect to the four supervisors—Joseph DeStafano, Murphy, Kurschner, and plaintiff—accused of having harassed Miller. (Codner Aff. ¶ 17; Cowie Aff. ¶ 10). The group recommended to Soares that the four supervisors be suspended. (Amrhein Aff. ¶ 10; Codner Aff. ¶ 19). After review of all the evidence, Soares concluded that the four individuals had harassed Miller because he had reported the environmental violation to his supervisors. In accordance with defendant's "no retaliation policy," Soares decided to discharge the four individuals.

(Soares Aff. ¶ 12). Richard Cowie, Vice President of Employee Relations, affirmed Soares's decision.

On June 23 and 24, 1997, defendant fired plaintiff and terminated the employment of the other three supervisors accused of having harassed Miller.[2] (Codner Aff. ¶ 21). On June 27, plaintiff filed an appeal of his discharge pursuant to company policy. (Pl. Dep. at 320; Soares Aff., Ex. B). On July 17, 1997, defendant notified plaintiff that his appeal had been denied. (Pl. Dep. at 343; Soares Aff., Ex. D). Defendant granted plaintiff's request to file a second appeal, which was also denied. (Cowie Aff. ¶ 16; *Id.*, Ex. D).

#### 5. *Plaintiff's Other Purported Evidence*

According to plaintiff's deposition testimony, defendant's chairman Eugene MacGrath made a speech sometime "in the nineties" about the need to have more younger people in the company. (Pl. Dep. at 101). Although plaintiff concedes that he did not hear the remarks himself and could not identify the time or place they were made, he contends that they show the existence of a company policy to replace older employees with younger ones.

Following his discharge, plaintiff applied for unemployment insurance benefits. On September 18, 1997, an Administrative Law Judge held that plaintiff was not eligible for benefits. On November 13, 1997, the Unemployment Insurance Appeal Board (the "Appeal Board") reversed, holding that "claimant's actions did not rise to the level of misconduct under the Law," and that he therefore was entitled to benefits. (Pl.Ex. 1 at 2).

---

1. The AD is responsible for investigating allegations of misconduct and harassment within the company. (O'Brien Aff. ¶ 3).

2. All four were over forty years old. Plaintiff and Murphy were fired. Kurschner and DeStafano, who were of retirement age, were given the choice of discharge or retirement. Both chose to retire. (Amrheim Aff. ¶ 10). Murphy has also filed an age discrimination case, *Murphy v. Consolidated Edison Co.,* 98 Civ. 6631(DC), which is pending before this Court.

### B. *Procedural History*

Plaintiff has exhausted his administrative remedies. He filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 10, 1997, and the EEOC issued plaintiff a right-to-sue letter dated January 13, 1998. On April 13, 1998, within ninety days of receipt of the right-to-sue letter, plaintiff commenced this lawsuit.

In his complaint, plaintiff alleges age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 623(a)(1), and the New York State Human Rights Law, N.Y. Exec. Law § 296 (McKinney 1993). Plaintiff seeks damages, costs, and attorney's fees. On May 27, 1998, defendant filed an answer denying the allegations of discrimination and asserting affirmative defenses. After a period of discovery in which plaintiff waived his right to conduct depositions and requested only that defendant produce his personnel file, this motion followed. (Letter from Sobin to Greenberg of 4/15/99).

### DISCUSSION

### A. *Legal Standards*

#### 1. *Summary Judgment*

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. *See id.*

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *National Union Fire Ins. Co. v. Deloach*, 708 F.Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

#### 2. *Age Discrimination*

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his or her burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason," *i.e.*, that there was discriminatory intent. *See Reeves v. Sanderson Plumbing Prods., Inc.*, —— U.S. ——, ——, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000); *Fields v. New York State Office of Mental Retardation and Devl. Disabilities*, 115 F.3d 116, 119 (2d Cir.1997).

In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case usually relies on the three-step *McDonnell Douglas* test. First, a plaintiff must establish a prima facie case of unlawful discrimination by showing that (1) he or she is a member of a protected class (2) who performed his or

her job satisfactorily (3) who suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir.1997). Second, if the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *See Reeves*, 120 S.Ct. at 2106; *Stratton*, 132 F.3d at 879. Third, if the defendant articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[3]

The plaintiff must then show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated at least in part by a discriminatory reason. *See, e.g., Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997). The plaintiff may do so by relying on the evidence presented to establish a prima facie case as well as any additional evidence. Because the defendant has at that point offered a nondiscriminatory reason for its actions, the plaintiff must usually show that the proffered reason is in reality a pretext for unlawful discrimination. *See Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 317 (2d Cir.1999).[4]

In *Reeves*, the Supreme Court addressed the issue of whether a plaintiff who establishes a prima facie case and presents proof of pretext must nonetheless *always* present additional evidence of discrimination to raise an issue for trial. The Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." 120 S.Ct. at 2109 (emphasis added). The Court rejected the argument that a plaintiff who presents a prima facie case and proof of pretext "must [nonetheless] *always* introduce additional, independent evidence of discrimination." *Id.* (emphasis added).

As *Reeves* makes clear, the issue is whether the record contains sufficient evidence to permit the trier of fact "to infer the ultimate fact of discrimination." *Id.* at 2108. In many cases, the prima facie case and proof of pretext will be sufficient, without more, to permit such an inference, and in that event a plaintiff need do no more to defeat the motion for summary judgment. In other cases, however, the prima facie case and proof of pretext alone will not be enough to create a genuine issue of fact, such as when "plaintiff create[s] a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 2109. In the latter instance, the plaintiff will be required to present additional evidence to defeat the motion. The key is whether there is sufficient evidence in the record—whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence—to sup-

---

3. The substantive law under the New York Human Rights Law is the same as under the ADEA. *See, e.g., Da Cunha v. Globo Int'l Ltd.*, No. 97 Civ. 7989(MBM), 1999 WL 38177, at *5 (S.D.N.Y. Jan.28, 1999) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 n. 4 (2d Cir.1995)).

4. A showing that the defendant's proffered reason for discharging plaintiff is pretextual is not *always* required. *See Renz v. Grey Adver.*,

*Inc.*, 135 F.3d 217, 222 n. 3 (2d Cir.1997) (proof of pretext is neither necessary nor sufficient by itself to establish liability); *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir.1997). As a matter of logic, however, where defendant articulates a nondiscriminatory reason for its action, proof that the offered reason is pretextual would obviously be helpful to plaintiff.

port an inference of discrimination.[5]

## B.  Application

Here, I assume that plaintiff has made out a prima facie case.  Defendant has articulated a legitimate, nondiscriminatory reason for firing him, contending that plaintiff was terminated because he violated defendant's "no retaliation policy" concerning employees who reported environmental violations.  Hence, rather than address each of the different steps of the different prongs of the *McDonnell Douglas* test, I proceed directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find discrimination.  I do so by evaluating first plaintiff's evidence, then defendant's evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997); *see also Siano v. Haber*, 40 F.Supp.2d 516, 520 (S.D.N.Y.1999), *aff'd mem.* 201 F.3d 432, 1999 WL 1295923 (2d Cir.1999); *Lapsley v. Columbia University–College of Physicians and Surgeons*, 999 F.Supp. 506, 515 (S.D.N.Y.1998).

### 1.  Plaintiff's Evidence

In opposition to Con Edison's motion for summary judgment, plaintiff submitted only the following:  the Appeal Board's decision, his December 6, 1996 performance review, and excerpts taken from his deposition and the depositions of two former employees.  Plaintiff did not take any depositions, nor did he submit any affidavits or any other documentary evidence.[6]

Hence, plaintiff's purported evidence that he was dismissed because of his age consists of:  (a) his age;  (b) his positive performance review;  (c) the alleged discriminatory remarks;  (d) pretext; and (e) the excerpts from the depositions of the two other employees.

#### a.  Age

Plaintiff was forty-three years old when he was fired.  (Pl. Dep. at 24;  Codner Aff. ¶ 21).  Hence, plaintiff was in the protected age category at the time of his discharge.

#### b.  December 1996 Performance Review

Codner and Gabrois gave plaintiff excellent performance reviews in December 1996.  As a result of this review, plaintiff received a company incentive award of $8,500 in 1997.  (Pl.Ex. 7;  Pl. Dep. at 69–72).  Moreover, plaintiff had been employed by Con Edison for more than twenty years.  Thus, a jury could certainly find that plaintiff performed his duties, in general, in a satisfactory manner.

#### c.  Discriminatory Remarks

At his deposition, plaintiff testified that he had heard from someone that MacGrath had publicly announced a company policy to replace older employees with younger ones.  He contends that this constitutes evidence that he was fired because of his age.  That contention is rejected, however, for the purported statement is inadmissible.  First, plaintiff cannot identify either the specific time (except that it was sometime "in the nineties") or place MacGrath's alleged re-

---

5.  In fact, because the fourth prong of the prima facie case in this context is proof of circumstances giving rise to an inference of discrimination, as a practical matter there is little difference between the evidence that a plaintiff would present in proving just the prima facie case and pretext and in proving the "ultimate fact" of discrimination.

6.  In terms of law, plaintiff submitted only an eight-page memorandum of law in opposition to the motion.  The memorandum only discusses the standards applicable to summary judgment motions in employment cases and to the admissibility of hearsay evidence.  Plaintiff provides one citation to evidence—his positive performance review—in the memorandum.

marks were made. (Pl. Dep. at 101). Second, he also fails to identify the person who allegedly told him about MacGrath's remarks. (*Id.* at 100–01). Hence, the statement is inadmissible double hearsay.

### d. *Pretext*

Although plaintiff admits sending the March 21st E-mail, he argues that at worst it was a prank. Accordingly, he contends that defendant's stated reason for firing him is pretextual because his discharge was a gross over-reaction to the incident, and he further contends that defendant must be seizing on the incident as a pretext to hide discrimination. Plaintiff points to the Appeal Board decision that his actions did not constitute misconduct to support his claim that the company overreacted to the incident. I discuss the issue of pretext further below.

### e. *Deposition Excerpts*

The excerpts from the depositions of the two former employees do not constitute any evidence defendant fired plaintiff because of his age. First, the excerpts are from individuals, John Mastropolo and Terrence J. McPartland; suing the defendant in two cases unrelated to the instant one; the individuals were not involved in any way in the incident that gave rise to this case. Second, plaintiff submitted these excerpts without discussing how they support his discrimination claim except to contend in a conclusory manner that they constituted "evidence of age discrimination." (Pl. Dep. at 104–05).

### 2. *Defendant's Evidence*

Defendant has submitted substantial evidence to show that it fired plaintiff not because of his age, but because of his violation of defendant's "no retaliation policy" after the company had entered into a "heightened awareness" period with respect to environmental issues. (Def. Mem. at 5).

### a. *Plaintiff's Improper Conduct*

Defendant submitted undisputed evidence that plaintiff sent the March 21st E-mail that Miller considered to be an act of harassment. Plaintiff admitted that it was his idea to send the March 21st E-mail. Hence, in concert with others, plaintiff sent an e-mail that was intended to harass Miller for reporting an environmental concern, and he sought to disguise his identity in doing so. (Pl. Dep. at 181–85).

### b. *Efforts to Address Environmental Concerns*

Plaintiff's inappropriate conduct occurred in the context of Con Edison's heightened concern over the ability of employees to report environmental concerns without fear of reprisal. Defendant adduced evidence that following the appointment of the Monitor in April 1995, it took extensive steps to address environmental concerns throughout the company, including revising its Code of Conduct to institute a "no retaliation policy" against those employees who reported environmental violations to superiors. Defendant submitted evidence that it widely publicized the changes and that plaintiff was aware of the "no retaliation policy." (Sobin Aff., Ex. B at 236–37, 239–40; *Id.*, Exs. D, E). Moreover, it is undisputed that defendant dealt equally with all four individuals accused of having harassed Miller; they were all discharged or asked to resign within forty-eight hours. (Codner Aff. ¶ 21).

### c. *Decisionmakers*

### i. *Age*

Defendant points out that all the individuals involved in the decision to terminate plaintiff's employment were themselves over forty years old, at least seven years older than plaintiff, and in the protected age class. (Def. Mem. at 22); *see Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) (inference against discriminatory intent when all decision-makers are in protected class).

#### ii. *Same Decisionmakers*

Because the same people who approved an incentive award for plaintiff only the year before made the decision to discharge him, this factor also suggests that discrimination was not a cause of his layoff. *See Lapsley.*, 999 F.Supp. at 523 (citing *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) ("[w]hen the [people] who made the decision to fire [were] the same [people] who made the decision to hire, it is difficult to impute to [them] an invidious motivation that would be inconsistent with the decision to hire," especially when the firing occurred only a short time after the hiring)); *Ali v. Tribune Entertainment Co.*, No. 93 Civ. 1398(CSH), 1996 WL 384913, at *8 (S.D.N.Y. July 10, 1996) (strong inference that discrimination did not motivate the termination decision when the same individuals both promoted and fired plaintiff).

#### 3. *The Record as a Whole*

■ On the record as a whole, no reasonable jury could conclude that defendant's proffered reason for terminating plaintiff—his violation of the "no retaliation policy"—is a pretext for discrimination. First, plaintiff admitted sending the March 21st E-mail to Miller even though he was fully aware of defendant's "no retaliation policy." Hence, he admittedly engaged in inappropriate conduct. Second, defendant simultaneously terminated the employment of all the individuals involved in the harassment of Miller. Third, it is undisputed that Con Edison was the subject of criminal proceedings, that its actions were being reviewed by a court monitor, and that as a consequence the company had a "no tolerance" policy with respect to the harassment of individuals who reported environmental concerns. Under these circumstances, and in the absence of any credible evidence that Con Edison was "dissembling to cover up a discriminatory purpose," *Reeves*, 120 S.Ct. at 2108, no reasonable jury could find that Con Edison's proffered justification is false. *See Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 310 (S.D.N.Y.2000).

Ultimately, plaintiff's evidence of discrimination is reduced to essentially three items: (1) his age; (2) his otherwise satisfactory work record; and (3) defendant's arguable over-reaction to plaintiff's behavior. These items, taken as a whole, are insufficient to support a finding of discrimination.

First, although plaintiff was in the protected age category at the time of his discharge, he was barely so. All the decisionmakers were also in the protected age category and at least seven years older than him. Hence, plaintiff's age is extremely thin evidence of age discrimination in the context of this case.[7]

Second, although plaintiff had an otherwise satisfactory work performance, that fact likewise is weak evidence of discrimination, for plaintiff was fired not for poor work performance but for misconduct—violating the company's no harassment policy.

Third, plaintiff argues that defendant over-reacted by firing him. Even assuming, however, that a jury could find that Con Edison over-reacted by firing plaintiff, the issue is not whether defendant's decision to fire plaintiff was an appropriate response to the sending of the e-mail, but whether plaintiff was dismissed, at least in part, because of his age. While the Appeal Board found in favor of plaintiff on grounds that his action "did not rise to the level of misconduct under the Law," it also concluded that plaintiff "may have exercised extremely poor judgment in this instance." (Pl.Ex. 1 at 2). Actions that do "not rise to the level of misconduct under the law" may be proper grounds for the

---

7. A forty-three year old employee in the context of a start-up Internet company—where the majority of employees are younger—undoubtedly would have a stronger case of discrimination. At Con Edison, however, a forty-three year old is surrounded by employees his age and older.

dismissal of an employee. *See Stern,* 131 F.3d at 315 (2d Cir.1997) ("It is simply inappropriate for a court to act 'as a super-personnel department that reexamines an entity's business decisions.'" (quoting *Dale v. Chicago Tribune,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987))); *Williams v. Brooklyn Union Gas Co.,* 819 F.Supp. 214, 230 (E.D.N.Y.1993) ("[employer] can be as arbitrary as he wants [in making good faith business judgments]" as long as he does not "discriminate on forbidden grounds").

Plaintiff's evidence is simply not enough to create an issue for trial. In view of the "abundant and uncontroverted independent evidence that no discrimination had occurred," *Reeves,* 120 S.Ct. at 2109, a reasonable jury could only conclude that defendant discharged plaintiff because of his violation of the company's "no retaliation policy" and not because of his age. *See Viola v. Philips Med. Sys.,* 42 F.3d 712, 716 (2d Cir.1994) ("A grant of summary judgment is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor.") (citation omitted); *Woroski v. Nashua Corp.,* 31 F.3d 105, 109–110 (2d Cir.1994) ("We recognize that plaintiffs did advance some evidence of age bias in the testimony about [plaintiff's supervisor's] statements. But some evidence is not sufficient to withstand a properly supported motion for summary judgment.").

### CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed, with prejudice. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.