William R. LEE, Plaintiff,

v.

Charles A. GLESSING and Palantine Nursing Home, Defendants.

No. CIV.99–CV–872(HGM/GLS).

United States District Court, N.D. New York.

April 19, 2001.

Oliver, Oliver Law Firm, Albany, NY, Lewis B. Oliver, Jr., for Plaintiff.

Primo, Centra Law Firm, Liverpool, NY, Terry J. Kirwan, for Defendant.

MUNSON, Senior District Judge.

## INTRODUCTION

On June 4, 1999, plaintiff filed a complaint claiming gender and disability based discrimination. He claims to have been discharged by defendants because of his gender and a mental disability. Defendants deny these allegations and seek summary judgment alleging nondiscriminatory reasons for plaintiff's termination. Plaintiff opposes the motion. For the following reasons, the court denies defendants' motion for summary judgment.

## BACKGROUND

Plaintiff, William Lee, brings this cause of action under Title VII, 42 U.S.C. § 2000e *et seq.*, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), the New York State Human Rights Law ("HRL") and New York Executive Law § §§ 296 *et seq.*, claiming discrimination based upon his gender, a mental disability and retaliation. Specifically, plaintiff contends that: (1) defendants unlawfully terminated his employment because of his gender in violation of Title VII and the HRL; (2) retaliated against him after he complained about sexual harassment and sexual discrimination in violation of Title VII and the HRL; (3) unlawfully terminated him because of his mental handicap in violation of the ADA and the HRL; and (4) failed to provide a reasonable accommodation for his handicap in violation of the ADA and the HRL.

To allay these allegedly discriminatory actions, plaintiff seeks: (1) declaratory judgment stating that defendants' conduct violated his civil rights; (2); an award of back pay and other related monetary benefits; (3) an order of reinstatement with reasonable accommodations for his disability; (4) retroactive seniority, retirement and other benefits; (5) a $1,000,000.00 award in compensation for his pain, suffering and humiliation; (6) an award of $500,000.00 for punitive damages; and (7) costs and attorney's fees.

Defendants, Charles Glessing and the Palantine Nursing Home, seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. To support this motion, they allege: (1) legitimate nondiscriminatory reasons for plaintiff's termination; (2) that plaintiff was not an employee under Title VII and cannot maintain a discrimination suit; (3) the conduct alleged does not constitute sexual harassment; (4) the conduct was not frequent or severe enough to create a hostile work environment; and (5) that they lacked the requisite knowledge to be liable for plaintiff's harassment. The court will address these claims and defenses *seriatim.*

## FACTS

Plaintiff is a physical therapist formerly employed by the Palantine Nursing Home. Plaintiff was continuously employed from May 17, 1995, to February 7, 1997, when he was terminated by Ms. Teresa Glessing, the facility's Acting Administrator, and Jo Ann Failing, Director of Nursing. Teresa Glessing and defendant Charles Glessing were plaintiff's direct supervisors.

Apparently, Palantine employed plaintiff, the only male employee, and approximately twenty-five women on a daily basis. Plaintiff accuses these female co-workers of sexually harassing him. Specifically, he

claims that his co-workers constantly joked with him about sex and sexual encounters by telling "off color" stories and openly flirting with him. This flirting included comments like, "I like to watch your butt" and "if you don't use it, it will fall off." *See* Compl. at ¶ 24. Plaintiff also claims that his co-workers threatened to rape him and questioned his sexual orientation. These sexual innuendos and explicit stories were intended to evoke an emotional response and were made constantly throughout the work day.

After facing months of this abuse, plaintiff asked his co-workers to stop all sex-based conversation in his presence. He informed them that such comments made him uncomfortable as the only male present. Furthermore, plaintiff alleges that his supervisors were aware of this harassing conversation and his discomfort as it frequently occurred in their presence. He also contends that his termination was part and parcel to this pattern of sexual harassment.

According to plaintiff, defendants terminated him after he was accused of sexually harassing a female co-worker. Apparently, plaintiff asked a Ms. Battisti out to dinner on two occasions without success. After the second attempt, Ms. Battisti complained about plaintiff's amorous advances to Ms. Failing, who later spoke to him about his actions. Plaintiff claims to have been unaware that this meeting was a warning about sexual harassment. Roughly one month later, plaintiff was again told to leave Ms. Battisti alone. However, on February 6, 1997, he asked Ms. Battisti about her "night job." Ms. Battisti reported to Palantine that plaintiff had accused her of being a prostitute. The next day, Theresa Glessing and Joanne Failing presented three written sexual harassment warning notices to plaintiff and terminated his contract.

Finally, plaintiff questions the basis for his termination claiming that it occurred without notice and was contrary to Palantine's sexual harassment policy. He also alleges that he was treated differently from female employees as none have been terminated for their harassing behavior.

## DISCUSSION

### I. *The Legal Standards: Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 247, 106 S.Ct. at 2510. Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party. *See Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). However, an alleged or hypothetical factual dispute will not defeat a motion for summary judgment. *See id.* Instead, the non-moving party must demonstrate that there are genuine factual issues to be decided by the trier of fact. *See id. (citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). An issue is considered "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ Furthermore, a non-moving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing the need for a trial. *See Connell v. Consolidated Edison Co. of New York*, 109 F.Supp.2d 202, 206 (S.D.N.Y.2000). Therefore, a non-moving party may not "merely . . . assert a conclusion without supplying supporting arguments or facts." *See id.* (*quoting Bell-South Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)) (internal quotations omitted).

■ In the context of employment discrimination cases, summary judgment is "ordinarily inappropriate" because the allegations therein require exploration into an employer's motivation and intent for an employment decision. *See Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 306 (S.D.N.Y.2000) (*citing Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984)); *see also Gallo v. Prudential Residential Servs.*, 22 F.3d, 1219, 1224 (2d Cir.1994). The reason for such judicial caution is that, "[e]mployers are rarely so cooperative as to include a notation in the personnel file that the [adverse employment action] is for a reason expressly forbidden by law." *Bicker-*

staff v. Vassar College, 196 F.3d 435, 448 (2d Cir.1999). Yet, summary judgment can still be appropriate in some cases as plaintiff retains the burden of producing evidence from which a reasonable juror could return a favorable verdict. *See Griffin*, 103 F.Supp.2d at 306.

## II. *Title VII: Sex Discrimination*

The standard to be used in employment discrimination cases has been outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this standard, a plaintiff is required to establish a *prima facie* case of unlawful employment discrimination by showing that: (1) he is a member of a protected class; (2) he satisfactorily performed his job; (3) he suffered an adverse employment action; and, (4) the action occurred under circumstances giving rise to an inference of discrimination.[1] See *id.* at 802, 93 S.Ct. at 1824; *Graham v. Long Island Railroad*, 230 F.3d 34, 38 (2d Cir. 2000). The burden of establishing a *prima facie* case "is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

1. Plaintiff claims involve reverse discrimination in which he accuses his employer of discriminating against the majority. Although the parties do not address the issue, some courts apply a heightened standard wherein a plaintiff must show that the defendant is the "unusual employer who discriminates against the majority." *See Olenick v. New York Telephone/A NYNEX Co.*, 881 F.Supp. 113, 114 (S.D.N.Y.1995). Unfortunately, the district courts in this Circuit disagree about whether this heightened burden is appropriate in light of the Supreme Court's instruction that Title VII " 'proscribe[s] racial discrimination . . . against whites on the same terms as racial discrimination against non-whites.' " *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 261 (E.D.N.Y. 1999) (*quoting McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 279, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976)); *Cully v. Milli-*

man & Robertson, Inc., 20 F.Supp.2d 636, 640–641 (S.D.N.Y.1998) (same).

Although the Second Circuit has not specifically resolved the issue, it has implied that the *McDonnell* standard should apply in reverse discrimination cases. Specifically, the Circuit has used the *McDonnell* burden shifting standard to claims of reverse discrimination. *See Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir.1997) (applying the *McDonnell* standard in an employment discrimination case asserted by a Caucasian male). Although this decision does not explicitly resolve the issue, this court, like so many others, is unwilling to apply the heightened burden analysis absent clear direction from the Second Circuit—especially in light of existing, albeit wisplike, precedent. For this reason, the court will apply the *McDonnell* standard herein.

Once plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to defendant to present legitimate nondiscriminatory reasons for its actions. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. If defendant articulates legitimate reasons for its actions, the presumption of discrimination is rebutted, and "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Then, the burden shifts back to plaintiff to prove that the employer's actions were actually motivated by discriminatory intent and its allegedly legitimate reasons are merely pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825.

■ In this case, defendants claim that plaintiff has not rebutted their nondiscriminatory reason for his dismissal. To support this position, defendants initially claimed that plaintiff was terminated for sexually harassing Ms. Battisti. However, in an amended statement of material facts, defendants also claimed that plaintiff was terminated for insubordination during an incident with Theresa Glessing rather than for sexual harassment.[2] Moreover, they maintain that plaintiff was never accused of sexual harassment and therefore was not shown Palantine's harassment policy. Despite this reversal of positions, plaintiff maintains that he was terminated for sexual harassment. Based upon the current record, it is impossible for the court to resolve this issue as the reason for plaintiff's dismissal has become a question of fact. As factual disputes must be resolved

at trial by a jury, summary judgment is inappropriate.

### III. *Independent Contractor*

■ The defendants also seek summary judgment arguing that plaintiff was an independent contractor and not an actual employee. In order to maintain a Title VII cause of action, a plaintiff must be considered an employee within the meaning of Title VII. Unfortunately, Title VII does not helpfully define the term "employee" as it merely refers to "an individual employed by an employer." In such situations where the term "employee" is not well defined by a statute, courts presume that the common law definition of the term controls. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–323, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). Of the three common law tests available to determine if a plaintiff qualifies as an employee, the Second Circuit has adopted the common law agency test used by the Supreme Court in *Darden*. *See Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir.1993). In this context, the key inquiry focuses primarily on the "hiring party's right to control the manner and means by which the product is accomplished." *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir.1997) (*quoting Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 2178–2179, 104 L.Ed.2d 811 (1989)). Among the factors relevant to this inquiry are:

the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the rela-

2. In a reply brief, defendants claimed that plaintiff's employment was terminated for both sexual harassment and insubordination. *See* Dkt. No. 31. However, defendants seem to recant this position in their amended statement of material facts. Specifically, they state that Theresa Glessing did not employ Palantine's Sexual Harassment Policy be-

cause plaintiff was not accused of harassment. This apparent reversal of positions again creates questions of fact that cannot be resolved through summary judgment. The court and plaintiff must know why he was fired before the issue of defendants' nondiscriminatory reasons for termination and pretext can be presented or considered.

tionship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (*quoting Reid*, 490 U.S. at 751–52, 109 S.Ct. at 2178–2179). No one factor is decisive; all aspects of the employment relationship must be assessed and weighed under the "totality of the circumstances." *Frankel*, 987 F.2d at 90. Finally, "the determination of whether a plaintiff is an employee or an independent contractor is a question of law, while the existence and degree of the legal factors to be considered in this determination are questions of fact." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988).

In the instant case, defendants initially claimed that Palantine did not control the manner and means by which plaintiff provided physical therapy to its residents. Moreover, they maintained that plaintiff had complete discretion over where or when these services were rendered. According to defendants, plaintiff also had complete discretion over his specific working hours so long as he worked four hours per week.[3] In return for his services, plaintiff was paid an hourly rate from which Palantine did not withhold taxes. For these reasons, defendants claim that plaintiff was an independent contractor rather than an actual employee.

Although defendants' initial assertions may support their contentions, the court is unable to resolve this question on the current record. Specifically, in their amended statement of facts, defendants again contradict their prior statements concerning the nature of plaintiff's employment. They state that Palantine controlled the patients to which plaintiff provided physical therapy. They also indicate that all physical therapy was administered on Palantine's equipment and within its facility. Furthermore, Palantine maintained sole discretion over employment and termination of physical therapy aides.[4] Since these statements clearly contradict defendants' prior position, the court is unable to determine the actual nature of plaintiff's employment relationship with defendants.

## IV. *Hostile Work Environment*

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Accordingly, " 'Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.' " *George v. Liverpool Central School District*, 2000 WL 1499342, at *5 (N.D.N.Y. Sept.29, 2000) (*quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). To prevail on a hostile work environment claim, a plaintiff must establish that: (1) the " 'workplace was permeated with discriminatory intimidation that was suffi-

**3.** Plaintiff worked between one to three hours per day, except once when he worked more than four hours in a day. *See* Am. Statement of Material Facts at ¶¶ 20–21.

**4.** Defendants have provided plaintiff's W–2 forms which show that no taxes were with-

held from his salary. Although this is a significant factor leaning towards plaintiff being an independent contractor, it alone does not resolve this question sufficiently to warrant summary judgment.

ciently severe or pervasive to alter the conditions of his work environment, and (2) a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 436 (2d Cir.1999) (*quoting Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)). To be actionable, the harassment at issue must both objectively and subjectively create a hostile or abusive work environment. *See Richardson*, 180 F.3d at 436. ("[A] Title VII hostile environment claim will succeed only where the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment, and where the victim subjectively perceive[s] the environment to be abusive") (internal quotation marks omitted).

When determining whether a given workplace is so permeated with discrimination as to support a Title VII claim, courts must examine the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and, (5) what psychological harm, if any, resulted. *See id.* at 437. These factors are a nonexclusive list which must be considered cumulatively so that the court may glean a realistic view of plaintiff's work environment. *See id.*

In assessing a plaintiff's allegations under these standards, courts have held that "[i]solated incidents or episodic conduct will not support a hostile work environment claim." *Id.* (" '[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment' under Title VII") (*quoting Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995)). The court is mindful, however,

that although isolated incidents are often inadequate, even a single severe episode of harassment can establish a hostile work environment. *See Richardson*, 180 F.3d at 437.

■ In the instant case, defendants argue that the actions alleged by plaintiff are not sufficiently severe or pervasive to be actionable under Title VII. They claim that plaintiff's allegations at worst constitute mere public flirtation and sexual joking, and that such comments are not severe enough to create a hostile work environment. Moreover, they contend that these actions consisted of only a few isolated incidents that occurred during a few weeks. Since plaintiff worked at Palantine for two years, defendants insist that the alleged harassment was far too infrequent to objectively become a hostile work environment. Finally, defendants argue that the behavior in question cannot be considered sexual in nature as none of his coworkers exposed themselves, solicited sex or threatened plaintiff.

Although it is a close issue, plaintiff has sufficiently stated a claim to withstand summary judgment. First, the court acknowledges that there are several glaring deficiencies in plaintiff's complaint. Specifically, there is virtually no evidence that the alleged remarks interfered with plaintiff's work performance. The closest allegation is that sexual comments became so severe that plaintiff ceased attending work-related social functions. Furthermore, the offending conduct consisted entirely of verbal harassment that was not accompanied by physically threatening behavior. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir.2000) ( [T]he physically threatening behavior of cornering a victim "brings this case over the line separating merely offensive or boorish conduct from actionable sexual harassment").

While the harassment suffered by plaintiff may seem somewhat insubstantial, the court cannot say, as a matter of law, that no reasonable jury would find that a hostile work environment existed. Contrary to defendants' claims, the instances of abuse articulated by plaintiff are more than single isolated episodes of verbal abuse. In fact, plaintiff alleges that his co-workers made continual sexual comments to him for a period of weeks or months. Furthermore, these comments were made in the presence of his peers, included threats of rape and attacked his sexual orientation. While these remarks were not accompanied by actual physical harm, plaintiff need not endure threats of harm, such as rape, to sustain a hostile work environment claim. *See Richardson,* 180 F.3d at 440. Moreover, the lack of physical harm alone is not reason to grant summary judgment. *See id.* For these reasons, the court is unwilling to determine that plaintiff's allegations are insufficient to allege a hostile work environment claim.

## V. *Employer Liability*

### 1. *Co-worker Harassment*

After establishing that a hostile work environment exists, a plaintiff must also demonstrate a specific basis for imputing liability for harassment to the employer in question. *See Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 63 (2d Cir. 1998). An employer is absolutely liable when the harassing culprit is a supervisor. *See id.* When a co-worker perpetrates the harassment, as occurred here, the employer is liable for its own negligence. *See id.* Therefore, an employer will only be liable where a plaintiff can demonstrate that the company " 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.' " *Id.* (*quoting Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995)).

Under Title VII, an employer's actual knowledge of the harassment is not required. *See Distasio,* 157 F.3d at 63. Instead, "an employer is considered to have notice of sexual harassment if the employer—or any of its agents or supervisory employees—knew or should have known of the conduct." *Id.* (*citing Murray,* 57 F.3d at 249). "The question of when an official's actual or constructive knowledge will be imputed to the employer is determined by agency principles." *Distasio,* 157 F.3d at 63. (*citing Torres v. Pisano,* 116 F.3d 625, 636–37 (2d Cir. 1997)). An official's knowledge will be imputed to an employer when:

> (A) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company; or (B) the official is charged with a duty to act on the knowledge and stop the harassment; or (C) the official is charged with a duty to inform the company of the harassment.

*See Distasio,* 157 F.3d at 63.

In this case, defendants argue that they cannot be liable for plaintiff's claims because Palantine has a policy designed to prevent harassment. Despite the existence of this policy, defendants claim that plaintiff never filed a sexual harassment complaint against any of his co-workers. For this reason, they seem to contend that Palantine was simply unaware that plaintiff had been harassed. In response, plaintiff alleges that Palantine knew about his harassment as it occurred in his supervisors' presence. Moreover, he claims to have informed his supervisors, Joanne Failing and Theresa Glessing, about the incidents of sexual harassment. He also maintains that these individuals failed to correct the situation or inform him about Palantine's formal harassment policy. He only obtained a copy of this policy after learning about his dismissal.

Once again, the court is faced with questions of fact that cannot be resolved through summary judgment. The litigants have taken opposite positions concerning whether plaintiff informed his supervisors about his harassment. As neither party offers any evidence to conclusively support their respective positions, a question of fact exists that precludes summary judgment in defendants favor.

### 2. *Strict Liability*

 As previously indicated, employers are liable for a hostile work environment created by a supervisor with immediate authority over an employee. However, such liability can be avoided in cases where the supervisor's harassment does not result in a tangible employment action against the plaintiff-employee. *See Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 2292–2293, 141 L.Ed.2d 662 (1998); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Specifically, the Supreme Court has held that when no tangible employment action is taken, a

defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807, 118 S.Ct. at 2293; *Burlington Indus., Inc.*, 524 U.S. at 765, 118 S.Ct. at 2270 (citations omitted).

Generally, a tangible employment action occurs where a supervisor acts with the employer's authority and makes a decision that "inflicts direct economic harm" on the employee. *Burlington Indus., Inc.*, 524 U.S. at 762, 118 S.Ct. at 2269. As stated by the Supreme Court in *Burlington,*

Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control. Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act.

*Id.* Moreover, "[a] tangible employment action constitutes a significant change in employment status, *such as hiring, firing,* failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761, 118 S.Ct. at 2268 (emphasis added).

In the instant case, defendants seek to invoke this defense claiming that no tangible employment action was taken concerning the alleged sexual harassment against plaintiff. They also claim that Palantine took the reasonable steps, by creating a Sexual Harassment Policy, to correct any wrongful behavior. Finally, they allege that plaintiff failed to avail himself of the written policy. For these reasons, defendants contend that they cannot be liable to plaintiff for his hostile work environment claims.

Frankly defendants' attempted use of this defense is not well articulated. They seem to believe that the creation of a harassment policy protects them from liability under *Faragher/Burlington*. How-

ever, *Faragher/Burlington* applies where a supervisor's harassment causes a hostile work environment and culminates in a tangible employment action such as a dismissal. In this case, *Faragher/Burlington* is not available to defendants as it is unclear if plaintiff's supervisors sexually harassed him. Moreover, if the supervisors did harass, they certainly took a tangible employment action when they fired plaintiff. For these reasons, this defense is unavailable to defendants.

### IV. *ADA Claims*

Plaintiff has voluntarily discontinued his ADA claims. As defendants do not object to discontinuance of these allegations, plaintiff's ADA claims are hereby dismissed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED**, that defendants' motion for summary judgment is **DENIED**. It is further

**ORDERED**, that plaintiff's ADA claims are **DISMISSED** through stipulation of the parties. It is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum–Decision and Order upon the parties by regular mail.