**Maurice MORRIS, Plaintiff,**

v.

**CITY OF NEW YORK and Howard Safir, as Commissioner of the New York City Police Department, Defendants.**

**No. 99 Civ 9813 DC.**

United States District Court, S.D. New York.

Aug. 6, 2001.

Carroll & Friess by Rosemary Carroll, New York City, for Plaintiff.

Michael D. Hess, Corporation Counsel of the City of New York by Daniel T. Dries-en, Assistant Corporation Counsel, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this action, plaintiff Maurice Morris, a police officer employed by the New York City Police Department (the "NYPD"), sues defendants the City of New York and Howard Safir, the former Police Commissioner (in his official capacity), for discrimination on the basis of disability. Plaintiff alleges that he was denied a promotion to the rank of sergeant because of his record of a disability. Plaintiff sues under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the New York State Human Rights Law, N.Y. Exec. § 290 *et seq.* (the "NYSHRL").

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that plaintiff has failed to establish a *prima facie* case of discrimination under the ADA and the NYSHRL, or in the alternative, on the ground that plaintiff cannot prove that defendants' stated reason for denying plaintiff a promotion is a pretext for discrimination. For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

### A. *Facts*

Construed in the light most favorable to plaintiff, the facts are as follows:

### 1. *Plaintiff's Employment and Medical History*

Plaintiff, a police officer with the NYPD since January 25, 1982, was injured on March 7, 1990, when a prisoner he was guarding struck him on the head with a pipe. (Compl. ¶¶ 9, 12–15; Pl.Ex. A). Plaintiff was treated for multiple injuries

including facial contusion and head trauma. (Compl. ¶ 15; Pl.Ex. B). He missed work for approximately six weeks, and upon return, was assigned to light-duty or clerical work. (Morris Dep. at 12, 13–14).

For several years after the assault, plaintiff occasionally suffered from dizziness, blackouts, headaches, and seizures. (Morris Dep. at 17–19; Pl.Ex. C–J). On at least one occasion, co-workers witnessed plaintiff suffering a blackout while on duty. (Pl.Ex.G). Plaintiff was diagnosed as having post-concussive syndrome, seizure disorder, and/or post-traumatic epilepsy. (Pl. Ex. F, H, and V). From March 1990 until December 1996, he took the drug Dilantin to control seizures. (Morris Dep. at 17–18). From March 1990 until November 1997, plaintiff also took daily prescription pain medication, which made him drowsy and diminished his capacity to work at times. (Morris Dep. at 20–22).

At the direction of an NYPD surgeon, plaintiff was placed on restricted duty from July 1990 to December 1996. (Pl.Ex. JJ at 1618; Markman Dep. at 13, 30).

Between March 1990, when plaintiff suffered his injury, and January 2000, plaintiff missed work a total of 431 days. (Def.Ex. J; Pl.Ex. JJ at 1617). The majority of these absences were reported by plaintiff as having resulted from his injury. (Pl.Ex. JJ; Markman Dep. at 41–42). Under NYPD policy, an NYPD surgeon must review medical records or conduct a medical exam for all absences exceeding two days. (Markman Dep. at 42).

Plaintiff no longer takes anti-seizure medication. (Compl.¶ 21).

### 2. *Plaintiff's Work Performance*

By 1999, plaintiff had received two Excellent Police Duty Awards. (Def.Ex.J). In recommending plaintiff for departmen-tal recognition, plaintiff's supervisor noted his "extraordinary bravery." (Pl.Ex.A).

Plaintiff's evaluations included ratings of "competent" and "meets standards." (Pl. Ex.II). He was described as "an experienced, seasoned officer who works well with others and has good rapport with everyone that he comes in contact with," "diligent and persistent in carrying out his police duties," "a very competent and conscientious police officer," and "a service oriented officer who has good career potential." (Pl.Ex. II at 1574, 1586).

In December 1999, plaintiff's commanding officer recommended that plaintiff be promoted to sergeant and noted that despite plaintiff's "excessive sick record," "all agree that [plaintiff] is a calm, careful and serious individual who is a competent police officer and one who has the potential to be an effective supervisor[.]" (Pl.Ex. HH ¶¶ 1, 9). His supervisor further noted that plaintiff's attendance had improved markedly over the past year. (Pl.Ex. HH ¶ 6).

### 3. *Plaintiff's Disciplinary History*

In April 1990 while on sick report, plaintiff twice violated NYPD policy by leaving his residence without permission. (Def.Rule 56.1 Statement ¶¶ 7–8; Def.Ex. C).

In January 1997, plaintiff refused to comply with an NYPD surgeon's direct order to return to full duty even though he complained of headaches. Following a disciplinary hearing, he was placed on probation for one year. (Morris Dep. at 27–28, 32–33; Def.Ex. D, F). The written decision described plaintiff's seizure disorder, use of Dilantin, and "extensive sick record." (Def.Ex. D at 6–7, 10). Plaintiff satisfactorily completed his probation on December 11, 1999. (Pl.Ex. HH ¶ 6; Def. Ex. J).

### 4. *Denial of Promotion to Sergeant*

Plaintiff passed the Civil Service Exam for promotion to the rank of sergeant in October 1996, and was passed over for promotion in 1998 and 1999. (Morris Dep. at 37; Compl. ¶¶ 23, 28–30; Def.Ex. I; Def.Rule 56.1 Statement ¶ 20).

When plaintiff was again considered for promotion to sergeant in January 2000, the Career Advancement Review Board ("CARB") recommended that he not be promoted. (Def.Rule 56.1 Statement ¶ 21; Pl.Resp. ¶ 1; Def.Ex. J). The CARB was chaired by Michael A. Markman, then Chief of Personnel. (Def.Ex.J).

In addition to interviewing plaintiff, the three members of the CARB reviewed documents that included plaintiff's performance evaluations, disciplinary record, medical history report, and sick record. (Markman Dep. at 18–28). The documents also included the 1997 disciplinary decision and the promotion recommendation by plaintiff's commanding officer. (Markman Dep. at 21, 24).

The CARB reviewed an employment summary that indicated that plaintiff had been absent 538 days. (Def.Ex.J). The summary also listed the reason for holding the CARB review as: "Performance: [Plaintiff] was placed on Dismissal Probation ... as a result of a failure to comply with a said order from the Medical Division to return to duty.... [Plaintiff] averages 4.2 days per year Line of Duty and 27.4 days per year Non Line of Duty [on sick report]." (Def.Ex.J).

The medical history report provided to the CARB included the reason given by plaintiff for each sick day, such as "dizzi-ness," "convulsions," and "post concussion syndrome." (Pl.Ex. JJ; Markman Dep. at 23).

At deposition, Markman testified that the CARB may have discussed plaintiff's sick record, restricted and limited duty status, and anti-seizure medication. (Markman Dep. at 53–54).

After the review, Markman issued a memorandum on behalf of the CARB that listed "performance" as the reason for the promotion denial. (Def.Ex.J, K). Markman's contemporaneous notes on the promotion decision included the comment "sick leave abuse." (Def.Ex.J). At deposition, Markman testified that the word "performance" referred to plaintiff's disciplinary charges and that he based his decision on plaintiff's disciplinary record. (Markman Dep. at 55, 71).

### B. *Procedural History*

On May 19, 1999, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against defendants, alleging discrimination based on disability. (Compl. ¶ 5; Def.Ex. M). The EEOC issued plaintiff a right-to-sue letter, dated June 22, 1999.

On August 11, 1999, within ninety days after receipt of the right-to-sue letter, plaintiff commenced this action in New York State Supreme Court, New York County, alleging that defendants denied him a promotion to the rank of sergeant based on a perceived disability or record of perceived disability,[1] in violation of the ADA and the NYSHRL (Compl.¶¶ 30–32). The action was removed to this Court on September 17, 1999.

This motion followed.

---

1. In plaintiff's complaint, he alleges that defendants discriminated against him based on "a perceived disability and/or a record of treatment for a perceived disability." (Compl.¶¶ 31–32). In his opposition brief, however, plaintiff alleges discrimination on the basis of a record of disability. (Pl.Opp.Br. at 2). For the purposes of this motion, I consider plaintiff's claim to involve discrimination on the basis of a record of disability.

### *DISCUSSION*

#### A. *Applicable Law*

##### 1. *Summary Judgment*

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505; *see Bay v. Times Mirror Magazines, Inc.* 936 F.2d 112, 116 (2d Cir.1991). A factual issue is genuine if it can reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. A fact is material if it can affect the outcome of the action based on the governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat a motion for summary judgment, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348; *see Fleurcius v. Short Line Hudson Transit Bus*, 2000 WL 1863536, *3–4 (S.D.N.Y. Dec. 20, 2000). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. As the Court stated in *Anderson*, "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

The Second Circuit has held that the same summary judgment standard applies in a discrimination case. *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1347 (2d Cir.1997) ("As in any other type of case, the judge must analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination."), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *see also Cobian v. New York City*, 2000 WL 1782744, *7–8 (S.D.N.Y. Dec. 6, 2000) (citing to same standards for an ADA claim).

##### 2. *Discrimination on the Basis of Disability*

■ Plaintiff alleges that he was denied a promotion as a result of his record of disability in violation of the ADA and the NYSHRL.[2] For the purposes of this motion, analysis of plaintiff's claims under the

---

2. In plaintiff's opposition brief, he raises for the first time a claim under 42 U.S.C. ¶ 1983 and the Fourteenth Amendment. Because "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," the Court will not consider such claims. *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 170 F.R.D. 111, 119 (S.D.N.Y.1997); *see also Beckman v. United States Postal Serv.*, 79 F.Supp.2d 394, 407–08 (S.D.N.Y.2000).

ADA and the NYSHRL is identical.[3] *See Parker v. Columbia Pictures*, 204 F.3d 326, 332 n. 1 (2d Cir.2000) (citing *Micari v. Trans World Airlines, Inc.*, 43 F.Supp.2d 275, 279 (E.D.N.Y.1999)); *Barnett v. Revere Smelting & Ref. Corp.*, 67 F.Supp.2d 378, 388 (S.D.N.Y.1999).

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Buckley v. Consolidated Edison Co.*, 155 F.3d 150, 153–54 (2d Cir.1998). A "disability" within the meaning of the ADA includes: (1) a physical or mental impairment that substantially limits a major life activity; (2) a record of such an impairment; or (3) a perceived impairment. 42 U.S.C. § 12102(2).

■ To state a claim under the ADA, a plaintiff must first establish a *prima facie* case by showing that: (1) his employer is covered by the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Reeves*, 140 F.3d at 149–50 (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998)).

■ To satisfy the fourth element, the causal relationship between the disability and the adverse employment decision need not be direct, and a plaintiff may establish that the decision was motivated by his disability by demonstrating that "the disability caused conduct that, in turn, motivated" the employer's decision. *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir.1994); *see also Greene v. New York*, 1998 WL 264838, *5 (S.D.N.Y. May 22, 1998). Moreover, the Second Circuit has held that to establish a *prima facie* case of discrimination based on disability, a plaintiff need not prove that disability was the sole but-for cause for the employer's decision. *See Parker*, 204 F.3d at 336–37. Instead, a plaintiff "must show only that disability played a motivating role in the decision." *Id.* at 337.

■ In adjudicating ADA claims, the Second Circuit applies the same burden-shifting framework for federal discrimination claims set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir.1998) (applying *McDonnell Douglas* framework in ADA case). If the plaintiff meets his burden of establishing a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. As the Supreme Court has noted, "[t]his burden is one of production, not persuasion." *Id.*

■ Next, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*,

---

**3.** The Second Circuit has held that the NYSHRL provides a broader definition of "disability" than does the ADA. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154–56 (2d Cir.1998). Defendants, however, do not challenge plaintiff's qualification for coverage under the ADA; accordingly, this distinction between the two statutes is not relevant for purposes of this motion.

509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason. *See Parker,* 204 F.3d at 336–37; *Connell v. Consolidated Edison Co.,* 109 F.Supp.2d 202, 207 (S.D.N.Y.2000). The "ultimate issue ... is whether the plaintiff has sustained [the] burden of proving that the adverse action was motivated by an impermissible reason." *Fields v. New York State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 119 (2d Cir.1997).

To meet this burden, the plaintiff may rely on evidence presented to establish his *prima facie* case as well as additional evidence. It is not sufficient, however, for a plaintiff merely to show that he satisfies *"McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation was false." *James,* 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.* at 156; *Connell,* 109 F.Supp.2d at 207–08.

As the Second Circuit noted in *James:* "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 157; *see Lapsley v. Columbia Univ.,* 999 F.Supp. 506 (S.D.N.Y.1998) (advocating elimination of *McDonnell Doug-*

*las* test in favor of simplified approach focusing on ultimate issue of whether sufficient evidence exists to permit jury to find discrimination).

**B. *Application***

Defendants argue that plaintiff is unable to establish the fourth element of the *prima facie* case: that he was denied a promotion because of his record of disability. In the alternative, defendants assert that even if plaintiff is able to establish a prima facie case, he is unable to show that their proffered reason for the promotion decision is a pretext for discrimination on the basis of disability.

Here, I address defendants' arguments in the context of examining the entire record in considering the "ultimate question": whether the record contains sufficient evidence from which a reasonable jury could find discrimination. I evaluate first plaintiff's evidence, then defendants' evidence, and finally the record as a whole, keeping in mind the elusiveness of proof of discrimination and the principle that the jury is "entitled to view the evidence as a whole." *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 314 (2d Cir.1997).

### 1. *Plaintiff's Evidence*

To support his discrimination claim, plaintiff offers the following evidence: his seizure disorder and related record of disability; his absences from work resulting from his medical condition; the performance of his work in a more than satisfactory manner as confirmed by positive performance evaluations, departmental recognition, and the recommendation of his commanding officer; the denial of plaintiff's promotion to sergeant; the CARB's review of documents detailing his medical history, sick record, use of antiseizure medication, and history of limited or restricted duty; the CARB's review of

internal NYPD documents that referred to plaintiff's sick record as "excessive" and "extensive"; the CARB's recommendation that plaintiff not be promoted because of "performance"; the employment summary defining the word "performance" to include plaintiff's average number of sick days per year; and Markman's contemporaneous notes listing "sick leave abuse" as a reason for the decision.

Plaintiff's evidence suggests that his sick record may have been a motivating factor in defendants' decision not to promote him. Under the ADA, an employee's absenteeism may be a permissible motive for an adverse employment decision where it interferes with the employee's ability to perform the essential functions of the job. *See, e.g., Mescall v. Marra*, 49 F.Supp.2d 365, 374 (S.D.N.Y.1999) (finding school guidance counselor not qualified because she missed forty-one days over two-and-a-half year period); *Daddazio v. Katherine Gibbs School, Inc.*, 1999 WL 228344, *5–6 (S.D.N.Y. April 20, 1999) (finding plaintiff not qualified because he never returned to work after being hospitalized); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 798 (W.D.N.Y.1996) ("ADA does not require an employer to accommodate an employee who cannot get to work"). Of course, an employee who is excessively absent is not performing the essential functions of his job.

In determining what constitutes "the essential functions" of the job, "consideration shall be given to the employer's judgment." 29 C.F.R. § 1630.2(n)(1). An employer's own policies may be considered in determining whether an employee's attendance record rendered the employee not qualified for the job. *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1044, 1047 (6th Cir.1998) (finding plaintiff not qualified where she violated company policy limiting medical leave to twelve

months); *Kolovos v. Sheahan*, 1999 WL 1101919, *8 (N.D.Ill. Nov.29, 1999) (noting that employer may enforce a neutral policy against extended absences, such as disciplining employee for absences that exceed a time limit set out by the employer); *Aquinas v. Federal Express Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996) (finding excessively absent employee not qualified where employer expressly informed employees that daily attendance was "imperative").

Where the employer was aware that an employee's absences were related to a disability, however, the employee's attendance record may be an impermissible pretext for the employee's disability. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir.1998) (stating that excessive absence may be "a pretext or even a proxy" for plaintiff's disability); *Kolovos*, 1999 WL 1101919, *5–8 (discussing absenteeism as potential pretext for discrimination based on disability, in case involving denial of promotion); *Barnett*, 67 F.Supp.2d at 392 ("excessive absenteeism ... cannot analytically be considered apart from the alleged disability causing the absenteeism"); *Greene*, 1998 WL 264838, *6–7 (finding basis for inference of discrimination where employer made overt reference to employee's illness as motive for termination and supervisors knew employee's absences were closely related to disability).

In the instant case, defendants do not dispute that at the time of the CARB review, plaintiff was qualified to perform the essential functions of the job of sergeant. (Def.Mem. at 9). Plaintiff received uniformly positive performance evaluations, won two departmental awards for excellent police work, passed the sergeant's exam, and received a recommendation from his commanding officer. Plaintiff's attendance record had improved dramatically during the year before the

CARB review, as noted in his supervisor's recommendation. With the exception of the January 1997 disciplinary incident, there is no evidence to suggest that plaintiff's sick days were not approved by the NYPD, or not medically documented as required by NYPD policy. Further, the record contains no evidence that plaintiff's absences had exceeded any fixed NYPD policy delineating the number of sick days that would disqualify a candidate from promotion to sergeant. *See Kolovos*, 1999 WL 1101919, *8 (finding triable issue as to whether absenteeism was a pretext for discrimination where "there does not appear to have been any kind of written or otherwise fixed policy about the amount of absenteeism that would disqualify a [promotion] candidate"). The members of the CARB had access to information relating to plaintiff's medical history, seizure disorder, anti-seizure medication, and history of limited and restricted duty. Given these facts, defendant's overt reference to "sick leave abuse" as a reason for the decision, coupled with defendants' knowledge that plaintiff's absences were closely related to his disability, could reasonably provide a basis for an inference of discrimination. In other words, a reasonable jury could conclude, on this record, that although plaintiff had suffered from excessive absenteeism in the past, he had fully recovered from his ailment, but the NYPD declined to promote him because of continued, unfounded concerns about his ability to perform the functions of a sergeant.

Thus, plaintiff has presented concrete evidence from which a reasonable jury could find that defendants made an impermissible decision not promote him because of his record of disability.

### 2. *Defendants' Evidence*

■ Defendants' central argument is that the decision not to promote plaintiff was based not on his disability but on his disciplinary record, and that an employee's disciplinary record, inappropriate behavior, or misconduct is a legitimate, nondiscriminatory reason for an adverse employment decision. *See, e.g., Connell*, 109 F.Supp.2d at 210–11 (finding harassment of coworker legitimate justification for dismissal of employee); *Evans v. Golub Corp.*, 29 F.Supp.2d 194, 205–06 (S.D.N.Y. 1998) (discussing termination based, in part, on disobeying a direct order).

In support of their contention, defendants argue that Markman's use of the phrase "sick leave abuse" referred to plaintiff's violations of NYPD sick leave policies: leaving his residence while on sick report in April 1990 and failing to comply with a direct order from an NYPD surgeon to return to full duty in January 1997. Defendants also point to Markman's deposition testimony that the word "performance" referred to plaintiff's disciplinary charges and not his sick record. Defendants note that Markman further testified that plaintiff's disciplinary record, and not his disability, was the basis for his decision.

Defendants further argue that plaintiff's 1997 disciplinary violation, the refusal to obey a direct order, is a particularly serious infraction in a paramilitary organization such as the NYPD, citing *Baron v. Meloni*, 556 F.Supp. 796, 799–800 (W.D.N.Y.1983) ("By their very nature, police ... departments require discipline and obedience to commands of departmental hierarchy."), *aff'd* 779 F.2d 36 (2d Cir. 1985).

### 3. *Record as a Whole*

Considering the evidence as a whole, resolving all conflicts in the evidence and drawing all reasonable inferences in plaintiff's favor, I conclude that a reasonable jury could find that defendants denied

**504**

plaintiff's promotion, at least in part, because of his record of a disability.

Ultimately, the case turns on the conflicting evidence of the meaning of the terms "sick leave abuse" and "performance" as bases for the promotion decision, the credibility of Markman's testimony, and whether defendants' stated reasons for their decision not to promote plaintiff are pretextual. While defendants contend that the terms "sick leave abuse" and "performance" refer exclusively to plaintiff's disciplinary charges and not to his sick record, other evidence in the record suggests otherwise. It is not up to the Court to resolve these questions of fact. Given defendants' overt references to plaintiff's sick record, evidence of defendants' knowledge that plaintiff's sick days were closely related to his disability, the fact that one of plaintiff's two disciplinary charges was more than eight years old at the time of the promotion decision, and the record as a whole, a jury might reasonably infer that defendants' decision not to promote plaintiff was motivated, at least in part, by discrimination on the basis of a record of disability.

### *CONCLUSION*

For the reasons set forth above, defendants' motion for summary judgment is denied. The parties shall appear for a pre-trial conference on August 24, 2001, at 11:30 a.m., at Courtroom 11A, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York.

SO ORDERED.