Maverick **KENDRICKS**, Plaintiff,

v.

**WESTHAB, INC.**, Defendant.

**No. 98 Civ. 158(VM).**

United States District Court, S.D. New York.

Sept. 28, 2001.

Maverick A. Kendricks, Yonkers, NY, for plaintiff.

Susan Schenkel–Savitt, Winston & Strawn, New York City, for defendant.

## ORDER

MARRERO, District Judge.

Defendant Westhab, Inc. ("Westhab") moved to dismiss the amended complaint of plaintiff Maverick Kendricks ("Kendricks") for failure to state a claim. Magistrate Judge Ronald L. Ellis issued a Report and Recommendation, dated August 30, 2001 (the "Report"), recommending that the motion be granted and the amended complaint be dismissed. The Report is incorporated and attached hereto as Exhibit A. Kendricks has interposed no objection to the Report.

The Court has considered the disability and retaliation claims raised by Kendricks in his amended pleading and Magistrate Judge Ellis's analysis and conclusions with respect to each of them. In examining the record and the law pertinent to these two claims, the Court concludes that the principles and authorities relied upon by

Magistrate Judge Ellis in recommending dismissal of the amended complaint are controlling and sufficient to dispose of both of Kendricks's claims. Therefore, the Court accepts and adopts the Report in its entirety.

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

### REPORT AND RECOMMENDATION

ELLIS, United States Magistrate Judge.

#### I. INTRODUCTION

*Pro se* plaintiff Maverick Kendricks ("Kendricks") filed an amended complaint, dated January 10, 2001, to replead his claims of employment discrimination against defendant Westhab, Inc. ("Westhab"). On February 14, 2001, Westhab moved to dismiss Kendricks's amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, I recommend that Westhab's motion be **GRANTED,** and Kendricks's amended complaint be **DISMISSED.**

#### II. BACKGROUND

On October 31, 1997, the Pro Se Office received Kendricks's federal complaint alleging that Westhab had discriminated against him on the basis of a disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112–12117 ("ADA"). The complaint was filed on Jan-

uary 12, 1998. Kendricks alleged that Westhab had wrongfully discharged him on the basis of his disability and in retaliation for his opposing Westhab's discriminatory hiring practices. Additionally, Kendricks alleged discrimination based on race and gender pursuant to Title VII of the 1964 Civil Rights Act. *See* Compl. at ¶ 7.[1] Kendricks's ADA claim was (and is) premised on a head injury. He claims that he "fell on Westhab's grounds" and "hit his head." *Id.* The record shows that Kendricks experienced a seizure on or about February 1, 1995, for which he was hospitalized. *See Id.,* attached 2/1/1995 prehospital report. Thereafter, he was granted considerable leave time from work for medical reasons. *Id.,* attached 3/1/1995 letter from Westhab. Kendricks was terminated as of December 22, 1995. *Id.,* attached 1/10/1996 letter from Westhab.

On August 13, 1999, Westhab moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6). On February 22, 2000, this Court issued a Report and Recommendation recommending that Westhab's motion be granted, with leave for plaintiff to replead his ADA claim of employment discrimination based on disability and retaliation ("2/22/2000 R & R").[2] The Honorable Victor Marrero adopted the Report and Recommendation in its entirety by Order dated September 22, 2000.

On October 19, 2000, Kendricks filed a "Notice of Motion" requesting a "repleader of his claims of employment discrimination based on disability or retaliation." *See* Pl. Motion 10/19/00.[3] In an Order dated November 14, 2000, Judge Marrero allowed Kendricks to "file and serve by December 15, 2000 an amended complaint

---

**1.** "Compl." refers to Kendricks's original complaint, dated October 1, 1997.

**2.** Kendricks's allegations of discrimination based on gender or race were dismissed be-

cause Kendricks had not raised them in his charge to the EEOC.

**3.** "Pl. Motion 10/19/00" refers to Kendricks's Notice of Motion dated October 19, 2000.

in accordance with the Court's present and previous orders." On January 10, 2001, Kendricks filed an amended complaint, asserting four claims under the ADA and Title VII of the 1964 Civil Rights Act. *See* Am.Compl.[4]

Kendricks first alleges that Westhab "wrongfully terminated the plaintiff trying to silence his protests and by failing to accommodate plaintiff's disability." *Id.* ¶ 2. Second, Kendricks argues that "Westhab, its agents and employees [ . . . ] are part of a conspiracy to prevent the plaintiff from receiving benefits that are due him, and to malign his character in order to cas[t] doubt on the claims he has made against Westhab and their unlawful activities." *Id.* ¶ 4. In support of this claim, Kendricks contends that statements in a report by a benefits administrator regarding Kendricks's absences from work were false. See *Id.* ¶ 5.[5] Third, Kendricks lists his achievements at Westhab and states that he "had hoped to retire with Westhab, but came to realize that Westhab did not allow their employees to retire, only those employees who worked at 85 Executive Boulevard." *Id.* ¶ 13.[6] Fourth, Kendricks asserts that Westhab retaliated against him because of his "outspoken ways." *Id.* ¶ 15. In his attachments, Kendricks provides documentary evidence including time sheets, medical bills, and medical documents. *Id.* ¶ 19–21.

In a motion dated February 2, 2001, Westhab moved to dismiss Kendricks's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Westhab argues for dismissal on grounds that Kendricks's head injury does not qualify as a disability under the ADA, and Westhab did not fail to accommodate the injury even if it were deemed to constitute a disability. *See* Def.Mem. at 1.[7] Second, Westhab argues that Kendricks fails to set forth sufficient facts to plead retaliation. *Id.* Third, Westhab argues that any workers' compensation claim must be dismissed because Kendricks was not granted leave to plead it here and the New York Workers' Compensation Law precludes him from seeking relief in this forum. *Id.* at 5. Finally, Westhab argues that Kendricks's claims are untimely because his complaint was not filed within ninety days of receiving a right-to-sue letter from the EEOC, as required under 42 U.S.C. § 12117. *Id.* at 18.

In response, Kendricks filed an Affirmation in Opposition to Defendant's Motion to Dismiss ("Aff.Opp."), which was received by the Court on February 14, 2001. Kendricks again states that he suffers from the injuries sustained when he slipped and fell on Westhab's premises on February 1, 1995. Aff.Opp. ¶ 1. He also states that Westhab did not accommodate his injury, but required him to perform his regular duties, *Id.* ¶ 3, and that Westhab deprived him of health benefits and lied about him to the unemployment office and department of labor. *Id.* ¶ 4–11. The affirmation also recounts Kendricks's physical, financial, and emotional injuries. *Id.* Westhab's reply, dated February 20, 2001 ("Def.Reply"), essentially repeated arguments made in its motion. Finally, Kendricks filed a surreply ("Surreply"), dated

---

4. "Am.Compl." refers to Kendricks's amended complaint.

5. Kendricks appears to claim he is entitled to benefits he did not receive for his medical absences.

6. Kendricks appears to argue that Westhab wrongfully prevented him from claiming workers' compensation benefits.

7. "Def.Mem." refers to defendant's memorandum of law in support of its motion to dismiss, dated February 2, 2001.

March 27, 2001, arguing that his head injury resulted in seizures and other symptoms that qualify as a disability and that his termination was an act of retaliation by Westhab.

## III. DISCUSSION

### A. Standard for Motion to Dismiss

Dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). The test is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). The factual allegations in the complaint are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor. *See EEOC v. Staten Island Sav. Bank*, 207 F.3d 144 (2d Cir.2000).

Where a plaintiff proceeds *pro se*, a court must construe the complaint liberally and "interpret [it] to raise the strongest arguments that [it] suggest[s]." *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). *See also Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam* ) (holding that *pro se* complaints should be "held to less stringent standards than formal pleadings drafted by lawyers"). However, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (*quoting Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d

Cir.1978)). *See also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").

### B. Disability Claim

Kendricks alleges that Westhab discriminated against him because of his disability by terminating his employment and by failing to accommodate his disability. *See* Amend.Compl. at 1. Kendricks describes his disability as "permanent injuries for which he has to take medications for multiple ailments." *See* Aff.Opp. at 2. He then lists various symptoms and medical prescriptions. *Id.* Kendricks further asserts that Westhab failed to accommodate his disability by not assigning "light duty" work, by requiring him to pick up heavy objects, and by threatening to take away his position if he did not return to work after his injury. *Id.* Westhab counters that falling and hitting one's head is not a disability under the ADA and, even if it was, Kendricks has not shown that Westhab failed to accommodate the disability. *See* Def.Mem. at 12–13.

The Court agrees. To allege facts sufficient to state a claim under the ADA, a plaintiff must plead that he has a disability within the meaning of the statute. *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir.1995); *Schwartz v. Comex*, 1997 WL 187353, *4 (S.D.N.Y. April 15, 1997). The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regards to ... discharge of employees...." 42 U.S.C. § 12112(a). The plaintiff bears the initial burden of establishing

a prima facie case of discrimination. *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir.1998). To meet this burden, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. *Id.; Morris v. City of New York*, 153 F.Supp.2d 494, 499 (S.D.N.Y.2001).

■ Kendricks has failed to satisfy the second element, that he suffers from a disability within the meaning of the ADA. In order to show that he has a disability, Kendricks must demonstrate that he (1) has a physical or mental impairment that substantially limits his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); *see Schaefer v. State Ins. Fund*, 207 F.3d 139, 141 (2d Cir.2000). To determine whether an impairment "substantially limits" a major life activity, the court should consider the nature and severity of the impairment, the expected duration of the impairment, and the expected permanent impact of the impairment. *Id.* Under EEOC regulations, "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. § 1630.2(j) (interpretive guidance).

Here, Kendricks has not alleged or shown that his head injury substantially limits a major life activity or that he is regarded as having a substantially limiting impairment. Kendricks states that he has sustained "permanent injuries for which he has to take medications" and that to this day he "still suffers and sees his doctor(s) when he needs to or when his medications need to be adjusted." Pl.Affirm. at 2. These assertions are not sufficient to state

a disability claim. *See Hallgren v. Bell Atl. Corp.*, 2000 WL 726496, *1 (S.D.N.Y. May 30, 2000) (motion to dismiss granted where plaintiff listed various conditions but did not specify how they limited her activities); *Sacay v. Research Foundation of the City Univ. of N.Y.*, 44 F.Supp.2d 496, 501–502 (E.D.N.Y.1999) (complaint did not state an ADA claim where plaintiff listed multiple medical conditions but failed to identify what major life activity was substantially limited by the disability).

■ Moreover, assuming *arguendo* that Kendricks's head injury may be classified as a disability under the ADA, his claim that Westhab failed to accommodate the disability is without merit. To state a claim for discrimination based upon an employer's failure to accommodate, Kendricks must allege facts showing: (1) that he is an individual with a disability; (2) that an employer covered by the ADA had notice of his disability; (3) that with reasonable accommodation, he could perform the essential functions of the position; and (4) that the employer had refused to make such accommodations. *Lyons*, 68 F.3d at 1515–1516.

■ The record here does not show that Westhab knew of Kendricks's disability, or that Westhab refused to make a reasonable accommodation. Kendricks bears the burden of showing that a reasonable accommodation exists. *See Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir.1999). There is nothing in the record to suggest that assigning "light duty" work would have been a reasonable accommodation given the nature of his job. *See McLean–Nur v. Dept. of Transp.*, 2000 WL 297176 (S.D.N.Y. March 21, 2000) (granting defendant summary judgment where lifting heavy objects was an essential function of the job). The Court notes that, in fact, Westhab did grant Kendricks a leave of absence from January 12, 1995 to March

9, 1995, Compl., attached 3/1/1995 letter from Westhab. This appears to be a reasonable accommodation. *See Powers v. Polygram Holding, Inc.,* 40 F.Supp.2d 195, 201–202 (S.D.N.Y.1999) (Leaves of absence are reasonable accommodations under the ADA.). In any event, Kendricks does not allege that he actually requested an accommodation of "light duty" tasks or that Westhab refused to make the accommodation. In short, Kendricks has not pleaded pleaded sufficient facts to support his ADA claim.

## C. Retaliation Claim

In his original complaint, Kendricks asserted that his discriminatory discharge occurred "for my opposing the organization['s] discriminatory hiring practices [...]" Compl. ¶ 8. In his amended complaint, he sets forth the following allegations of retaliation: (1) Westhab "wrongfully terminated the plaintiff trying to silence his protests," Am.Compl. ¶ 2; (2); "Westhab, its agents and employees [...] are part of a conspiracy to prevent the plaintiff from receiving benefits [...] and to malign his character in order to case [sic] doubt on the claims he has made against Westhab and their unlawful activities," Am.Compl. ¶ 4; (3) Kendricks "spoke out against injustices being done to others," Am. Compl. ¶ 14; (4) "[p]laintiff will prove, because of his outspoken ways, that Westhab did retaliate against the plaintiff," Am.Compl. ¶ 15; and (5) "[i]n almost four (4) year [sic], plaintiff never received a pay raise. There was retaliation and discrimination against plaintiff." Am.Compl. ¶ 20.

■ The ADA and Title VII protect any individual who has opposed any unlawful employment practices or has made a charge. Under Title VII, it is unlawful for an employer to discriminate against an employee "because he opposed any practice made an unlawful employment practice by [the Act], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000c–3(a) (1994). The ADA contains a similar provision. 42 U.S.C. § 12203(a) (1994).

■ Courts have analyzed retaliation claims pursuant to the ADA and Title VII under the same framework. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999). To state a claim for retaliation under the ADA or Title VII, a plaintiff must show: "(1) he was engaged in protected activity; (2) the employer was aware of the activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Irvine v. Video Monitoring Servs. of American, L.P.,* 2000 WL 502863, at * 6 (S.D.N.Y. April 27, 2000) (*citing Galdieri–Ambrosini v. National Realty & Development Corp.,* 136 F.3d 276, 291–92 (2d Cir.1998)). To satisfy the first prong, the plaintiff must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (*citing Abel v. Bonfanti,* 625 F.Supp. 263, 267 (S.D.N.Y.1985)). Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *See id.* at 593.

■ Here, Kendricks has not set forth sufficient facts to plead a cause of action for retaliation. As an initial matter, Kendricks does not state clearly whether his retaliation claim is predicated upon his filing an EEOC charge and/or his protests of Westhab's allegedly unlawful activities.

In his amended complaint, Kendricks states that "Westhab had wrongfully terminated the plaintiff trying to silence his protests and by failing to accommodate plaintiff's disability." Amend.Compl. ¶ 2. Because Kendricks's employment was terminated before he filed his EEOC charge, it is unlikely that the EEOC charge formed the basis of his retaliation claim. Presumably, his retaliation claim is based upon his general protests against Westhab. However, although Kendricks refers to his protests and his "outspoken ways," he does not specify what he said or when he said it. Without more, the Court cannot conclude that these statements constituted a protected activity. Even assuming his protests were a protected activity, Kendricks does not demonstrate that Westhab was aware of his protests. Moreover, the substance of his allegations do not establish a causal link between his outspokenness and his subsequent discharge.

■ To the extent Kendricks claims Westhab retaliated by failing to pay his worker's compensation, the claim is meritless. As Westhab points out, state law provides the remedy for retaliation claims premised on worker's compensation. *See Williams v. Brooklyn Union Gas Col.,* 819 F.Supp. 214, 231 (E.D.N.Y.1993). Additionally, to the extent that Kendricks also argues that Westhab retaliated by opposing his application for unemployment benefits, *see* Aff.Opp. ¶ 4–11, the claim likewise fails because Kendricks does not allege facts to support this allegation and he did not raise the claim in his EEOC charge.

## IV. CONCLUSION

Kendricks has not demonstrated that he is disabled within the meaning of the ADA. He has also failed to plead the elements of a retaliation claim under either Title VII or the ADA. I, therefore, respectfully recommend that Westhab's motion be **GRANTED** and Kendricks's complaint be **DISMISSED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Victor Marrero, 40 Centre Street, Room 414, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) *(per curiam );* 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed. R.Civ.P. 72, 6(a),6(e).