Barry LISS, Plaintiff,

v.

NASSAU COUNTY, The Nassau County Department of Recreation and Parks, and the Nassau County Department of Public Works, Defendants.

No. 05–CV–4198 (ADS)(MLO).

United States District Court, E.D. New York.

April 4, 2006.

Patrick W. Johnson, Brooklyn, NY, for Plaintiff.

Lorna B. Goodman, County Attorney of Nassau County by Deputy County Attorney Chuma Joclyn Diamond, Mineola, NY, for Defendants.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

This case arises out of claims by Barry Liss (the "plaintiff") that Nassau County, the Nassau County Department of Recreation and Parks, and the Nassau County Department of Public Works (collectively, the "defendants") discriminated against him on the basis of a disability in violation the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq;* and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law. § 296. Presently before the Court is the defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to dismiss the complaint for failure to state a claim.

### I. BACKGROUND

The following facts are derived from the complaint and several doctor's letters and notes that were incorporated into the complaint by reference and submitted with the papers on this motion. The facts are taken as true for the purpose of this motion.

The plaintiff began working for the defendants on April 1, 1994. The plaintiff does not specify the nature of his position with the defendants. All that can be discerned from the facts in the complaint is that the plaintiff's employment required him to (1) climb ladders; (2) work at heights, including on rooftops; and (3) work outdoors.

On or about March 23, 1999, the plaintiff was injured at work while climbing up and down ladders carrying "heavy roofing equipment." The plaintiff does not specify what type of equipment he was carrying; what function he was performing; or the precisely nature or circumstances of his injury. The plaintiff suffered injuries to his wrists on his left and right arms, and fractured his spine. As a result of these injuries the plaintiff was unable to work for approximately two years. The plaintiff returned to work for the defendants on March 9, 2001.

During the period between September, 1999, and July, 2003, the plaintiff provided

the defendants with six doctors' letters and notes stating that the plaintiff suffered from several physical ailments, and suggesting that limitations be imposed on the type of tasks he should be required to perform. Specifically, the plaintiff provided the defendants with the following documents:

(1) a letter from Dr. Joel S. Delfiner of the Nassau County Medical Center, dated September 1, 1999, stating that the plaintiff suffered "abnormal neurological features" and that he should avoid heavy labor, climbing, and extreme temperatures, "especially hot temperatures";

(2) a letter from Dr. Naghma Shireen of the Nassau Medical Center, dated February 7, 2000, stating that the plaintiff "was to avoid heavy labor, climbing, and extremes of temperatures, especially hot temperatures";

(3) a letter from "the Nassau County Medical Center," dated February 14, 2001, stating that the plaintiff had "no neuro constrainment to return to work—but no inclined roofs. Flat roofs OK.";

(4) a letter from Dr. Karen Blitz of the Staten Island University Medical Center, dated March 7, 2001, advising the defendants that the plaintiff was "under [Dr. Blitz's] care in the Neurology clinic at Nassau County Medical Center (NCMC). He has been advised that he can return to work, but no work at any heights.";

(5) a letter from Dr. Oded Gerber of the University Physicians of Stony Brook, July 8, 2003, advising the defendants that "Mr. Liss has a neurological disorder that is worsened by heat. He requires a cool jacket and a vehicle with air conditioning."; and

(6) a letter from Karen Blitz–Shabbir of the Nassau County Medical Center, dated July 9, 2003, advising the defendants that the plaintiff had been diagnosed with multiple sclerosis and that he "is *not* able to work in hot temperatures or at any heights."

According to the complaint, the defendants continued to assign the plaintiff to perform tasks that involved working at heights and in hot temperatures without a "cooling jacket" and without access to conditioned air.

The plaintiff further alleges that on July 17, 2003, while in the course of his employment for the defendants, the plaintiff fell from a height while working on a ladder. The plaintiff suffered a broken right ankle and "severe permanent" cartilage damage as a result of this fall.

On or about April 23, 2004, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

On or about May 13, 2004, the plaintiff was injured again when he fell "onto a pile of bricks, on the back deck of his home." The plaintiff suffered a broken left wrist and a spinal fracture. Although the plaintiff was still employed by the defendants at this time, he was not on the job that day, and his activities were not employment-related. However, the plaintiff alleges that the damage caused to the cartilage of his ankle on July 17, 2003 precipitated this accident at his home.

In November 2004, the parties participated in a mediation session with the EEOC. The plaintiff alleges that as a result of this mediation session the defendants agreed to provide him with either a "cooling vest" or an air conditioned workspace when the outside temperature exceeded eighty degrees.

On June 21, 2005, the EEOC issued a Notice of Right to Sue letter to the plaintiff. On September 2, 2005, the plaintiff commenced this action within ninety days of receipt of the Right to Sue letter, alleging violations of the ADA, the NYSHRL,

and a claim for intentional infliction of emotional distress under New York State law.

## II. DISCUSSION

### A. Legal Standard

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000), *abrogated on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All of the factual allegations in the complaint must be accepted as true and all inferences drawn in the light most favorable to the plaintiff. *Id.* (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)).

In its analysis under Rule 12(b)(6), the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Id.* at 39 (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)). At the pleading stage, the plaintiff in an employment discrimination case need only provide a "short and plain statement" that " 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Swierkiewicz*, 534 U.S. at 512–13, 122 S.Ct. at 998 (citing *Conley*, 355 U.S. at 47, 78 S.Ct. at 103).

The Court notes that the parties' motion papers refer to matters outside the pleadings. In deciding whether the plaintiff's complaint states a claim for relief under the ADA, the Court will only consider the doctor's notes dated February 14, 2001, March 7, 2001, July 8, 2003, and July 9, 2003. These documents are appropriate for consideration because they were incorporated by reference in the complaint. The Court declines to consider the several decisions of the New York State Worker's Compensation Board, the affidavit of Barry. Liss, or the plaintiff's several applications for New York State Worker's Compensation benefits. As noted above, in considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court is required to limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991)). Because these additional documents were not attached to the complaint, and because the plaintiff did not reference prior Worker's Compensation proceedings in the complaint, the documents are not properly before the Court on this motion to dismiss.

### B. ADA CLAIMS

Section 12112 of the ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA further states that the term "discriminate," as used in the statute, includes

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A).

To prove a claim for discrimination based upon an employer's failure to accommodate, the plaintiff must establish that: (1) he is an individual with a disability; (2) an employer covered by the ADA had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the position; and (4) the employer had refused to make such accommodations. *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515–16 (2d Cir.1995); *Kendricks v. Westhab, Inc.,* 163 F.Supp.2d 263, 269 (S.D.N.Y.2001). As noted above, to defeat a motion to dismiss for failure to state a claim it is not necessary for the plaintiff to plead every element of a prima facie case. Rather, all that is required is a "short and plain" statement of the facts giving rise to the plaintiff's claim. See *Swierkiewicz,* 534 U.S. at 512–13, 122 S.Ct. at 998 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. at 103).

### 1. As to the 300–day Statute of Limitations

It is well-settled as a general rule that "[t]o sustain a claim for unlawful discrimination under [the ADA] a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." See 42 U.S.C. § 12117; *Zerilli–Edelglass v. N.Y. City Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003) (citations omitted). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and "each discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Mor-*

*gan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

If the actions complained of in the complaint falls outside of the 300–day period, the person can recover for that conduct if it is demonstrated that there was a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300–day period. *Bonner v. Guccione,* 178 F.3d 581, 584 (2d Cir.1999). Alternatively, a plaintiff may establish a "continuing violation" by identifying specific and related incidents of discrimination that an employer permitted to continue unremedied for a period of time. See *Lightfoot,* 110 F.3d at 907; *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996). " '[T]o qualify as a series of related acts, the events ... must not be isolated and sporadic outbreaks of discrimination, but a dogged pattern.' " *Nicholas v. Nynex, Inc.,* 974 F.Supp. 261, 267 (S.D.N.Y.1997) (quoting *Sunshine v. Long Island Univ.,* 862 F.Supp. 26, 29 (E.D.N.Y. 1994)).

The defendants argue that the plaintiff's claims should be dismissed because the underlying facts giving rise to the claims occurred outside the 300–day statute of limitations in ADA actions. The plaintiff's EEOC charge is stamped "received" by the EEOC on April 28, 2004. As such, claims arising from alleged conduct that took place 300 days before that day, which is July 4, 2003, are time-barred unless the plaintiff has pled a continuing violation by identifying specific and related incidents of discrimination that the defendants permitted to continue for a period of time.

Liberally construing the complaint, as the Court must do, the Court considers each occasion on which the plaintiff provided the defendants with one of the doctors' notes described above as a request for accommodation for his medical condition.

On six separate occasions the plaintiff advised the defendants that he suffered from a condition that prevented him from working at heights and/or in hot temperatures. Each refusal by the defendant to re-assign the plaintiff or otherwise accommodate his disability, and every subsequent occasion on which the plaintiff was assigned to tasks that involved working at heights or in high temperatures may fairly constitute a discrete act of discrimination. Thus, drawing all permissible inferences in the plaintiff's favor, these refusals potentially constitute "specific and related incidents" of discrimination that the defendants permitted to continue from September, 1999 through July, 2003. Two of these incidents, occurring on July 8 and 9, 2003, are within the 300–day limitations period. Also, the plaintiff's July 17, 2003 on-the-job injury, which the plaintiff alleges was a result of the defendants' failure to accommodate his disability, occurred within the limitation period. Accordingly, defendants' motion to dismiss the plaintiff's disability discrimination claims as timebarred is denied.

### 2. As to Whether a "Cooling Jacket" was a "Reasonable Accommodation" under the ADA

■ As discussed above, a plaintiff may state a claim under the ADA by alleging, among other things, that his employer failed to provide "reasonable accommodations" for the employee's physical limitations. *See* 42 U.S.C. § 12112(b)(5)(A). The ADA and the Regulations promulgated under the ADA are not precise in their definition of what constitutes "reasonable accommodations." *See* 42 U.S.C. § 12111(9); 29 C.F.R. § 1630.2(*o*). However, the Regulations do define the limits of an employer's accommodation obligation under the Act. Under the ADA, an employer's obligations

> do[ ] not extend to the provision of adjustments or modifications that are pri-

marily for the personal benefit of the individual with a disability. *Thus, if an adjustment or modification is job-related, e.g., specifically assists the individual in performing the duties of a particular job,* it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide.

29 C.F.R. pt. 1630, app. at § 1630.9 ("Interpretive Guidance on Title I of the Americans with Disabilities Act") (emphasis added).

The defendants also argue that the complaint fails to state a claim under the ADA to the extent that the plaintiff's claims are based on the defendants' failure to provide him with a "cooling jacket." According to the defendants, a "cooling jacket" is an item that the plaintiff requires during his daily activities, on and off the job. Therefore, the defendants contend that a "cooling jacket" is a "personal use item" not required to be provided by an employer. The plaintiff disputes this contention, arguing that his request for a "cooling jacket" was entirely work related.

The complaint contains no facts supporting the inference that the plaintiff requires a "cooling jacket" other than for employment purposes. Furthermore, the parties dispute when and for what purposes the plaintiff requires a "cooling jacket." Such a question of fact is not appropriate for determination on a motion to dismiss Accordingly, the defendants' motion to dismiss on this ground is denied.

### 3. As to the Plaintiff's Qualification under the ADA

■ A "qualified individual with a disability" is an "individual with a disability who with or without reasonable accommo-

342

dation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The defendants do not dispute that persons with the plaintiff's disability, multiple sclerosis, are covered under the ADA. Rather, the defendants argue that the plaintiff was not "qualified" under the ADA between July 14, 2003 and December 9, 2004 because he was "completely disabled" by an ankle injury during that time. Therefore, because the plaintiff was "completely disabled" by an ankle injury, he could not "perform the essential functions" of his employment, with or without accommodation for his multiple sclerosis.

In support of this argument the defendants refer to alleged admissions by the plaintiff at his Worker's Compensation proceeding that he was "totally disabled." In response, the plaintiff argues that despite his position at his Worker's Compensation proceeding, the plaintiff could have performed the essential functions of his job, the injury to his ankle notwithstanding, if reasonable accommodations for his disability were made.

The fact of the plaintiff's Worker's Compensation proceeding is not properly before this Court and will not be considered in the determination of this motion. Furthermore, the complaint contains no allegations regarding the nature of the plaintiff's ankle injury, other than to describe it as "severe" and "permanent." The plaintiff alleges no facts regarding the "essential functions" of his employment, or that support the inference that he was unable to perform these essential functions while suffering from his ankle injury. Also, the question of what tasks the plaintiff could and could not perform during the relevant time period is one of fact and, therefore, not appropriate for determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss because the plain-

tiff was not a "qualified individual with a disability" is denied.

## C. As to Worker's Compensation

In New York State, Worker's Compensation provides the exclusive remedy for any "accidental injury arising out of and in the course of employment." N.Y. Work. Comp. Law § 11 ("The liability of an employer prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever."). Relying on the exclusivity provision in the New York State Worker's Compensation law, the defendants argue that the plaintiff may not seek damages under the ADA or the NYSHRL for the injuries he sustained as a result of the accident that occurred when he was "assigned by the County to 'perform outdoor work at heights, in hot weather.'"

As noted below, the plaintiff's NYSHRL claim is dismissed because the plaintiff did not file the required Notice of Claim. Therefore, the Court will not address whether the New York State Worker's Compensation law acts as a bar to claims under a state anti-discrimination statute. With respect to the ADA, the defendants' argument is without merit. The New York State Worker's Compensation does not bar an employee from suing his employer under federal civil rights laws. See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir.1987) ("Were state law to erect such a bar, it would clearly run afoul of the Supremecy Clause."); Worthington v. City of New Haven, No. 3:94–CV–609, 1999 WL 958627, *8 (D.Conn. Oct. 5, 1999) ("A state law making recovery under a worker's compensation statute the exclusive remedy for work-related injuries cannot bar an employee from seeking relief for employment discrimination under the ADA ... in light of the Supremecy Clause of Article VI of the

Constitution"). Accordingly, the defendant's motion to dismiss the plaintiff's federal civil rights claims as pre-empted by State law is denied.

### D. As to the Plaintiff's State Law Claims

The plaintiff's second and third causes of action allege intentional infliction of emotional distress and a violation of the NYSHRL. The defendants contend that these claims must be dismissed on the ground that the plaintiff failed to file a timely Notice of Claim. *See* N.Y. Gen. Mun. Law § 50–e (McKinney 1999); N.Y. County Law § 52(1); *Feldman v. Nassau County,* 349 F.Supp.2d 528, 538 (E.D.N.Y. 2004); *Keating v. Gaffney,* 182 F.Supp.2d 278, 291 (E.D.N.Y.2001); *Pustilnik v. Hynes,* No. 99–4087, 2000 WL 914629, at *7 (E.D.N.Y. June 27, 2000); *Mills v. County of Monroe,* 59 N.Y.2d 307, 308, 464 N.Y.S.2d 709, 451 N.E.2d 456, 457 (1983) ("[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court."). The plaintiff does not dispute the defendants' argument that a Notice of Claim was not filed for either of his State law claims, and there is no indication that one was filed. Accordingly, the defendants' motion to dismiss the plaintiff's state law claims for intentional infliction of emotional distress and for violation of the NYSHRL is granted.

### E. As to Punitive Damages

█ Punitive damages are not recoverable against a municipal defendant. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–68, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Morris v. Lindau,* 196 F.3d 102, 112 (2d Cir.1999). Accordingly, the defendants' motion to dismiss

the plaintiff's claim for punitive damages is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim is **GRANTED IN PART**; and it is further

**ORDERED,** that the plaintiff's claims (1) under the NYSHRL; (2) for intentional infliction of emotional distress; and (3) for punitive damages are **DISMISSED**; and it is further

**ORDERED,** that the defendants' motion is otherwise **DENIED**; and it is further

**ORDERED,** that the parties are directed to contact United States Chief Magistrate Judge Michael L. Orentsein for the purpose of setting an expedited discovery schedule.

**SO ORDERED.**